FILED
2018 Apr-05 AM 10:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| SCP TUSCALOOSA, LLC, | ) |
| Plaintiff, | ) |
| vs. | ) 7:17-cv-00228-LSC |
| UNIVERSITY HOUSE TUSCALOOSA, LLC, et al., | ) |
| Defendants. | ) |

**MEMORANDUM OF OPINION**

Before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint. (Doc. 28.) Defendants have challenged the sufficiency of the allegations in Plaintiff's Amended Complaint under Federal Rules of Civil Procedure 9(b) and 12(b)(6). This Motion has been fully briefed and is now ripe for decision. For the reasons stated below, Defendants' Motion to Dismiss Plaintiff's Amended Complaint (doc. 28) is due to be GRANTED. As Defendants' Motion to Dismiss is only partial in nature, (*see id.* at 2-3), SCP's breach of contract claim continues against University House Tuscaloosa, LLC ("UHT") and the Scion Group, LLC ("Scion"), and its fraudulent suppression claim continues against UHT. (*See* Doc. 23 at 25.)

## I. BACKGROUND[1]

This case arises from an agreement between SCP Tuscaloosa, LLC ("SCP") and University House Communities Acquisitions, LLC ("UHC") for the sale of a mixed residential and retail housing project known as "South 10" in Tuscaloosa, Alabama. Also allegedly involved were a number of other entities related to UHC who are named Defendants in this action, including University House Communities Group, LLC ("UHC Group"), InvenTrust Property Management, LLC ("InvenTrust"), and Scion. On March 23, 2017, Defendants filed their first Motion to Dismiss (doc. 10) arguing that Plaintiff's Complaint failed to state a claim for breach of contract or fraudulent suppression under Federal Rules of Civil Procedure 9(b) and 12(b)(6). The Court addressed Defendants' arguments in a Memorandum of Opinion (doc. 23), in which it granted Defendants' Motion in part and denied it in part. In its Memorandum, the Court additionally gave leave to Plaintiff to correct the deficiencies in its factual allegations in relation to three issues:

> 1. SCP failed to state a claim for breach of contract against UHC Group and InvenTrust, because it stated no facts "*specific* to how UHC Group and InvenTrust are bound by the [Purchase and Sale

---

[1] The Court solely recounts the facts pertinent to the present, renewed Motion to Dismiss. The Court has given a general summary of the factual basis for this action in its previous Memorandum of Opinion.

Agreement (the "PSA")] or Earn-Out Agreement and how they breached that duty."

2. SCP failed to state a claim for breach of contract against UHC, as it appeared to allege in its Complaint that SCP consented to the assignment of the duties and obligations contained in the PSA from UHC to UHT, and in doing so relieved UHC from liability under the PSA. SCP also failed to show how UHC is liable under the Earn-Out Agreement as it included no factual allegations showing that UHC was a party to that agreement.

3. SCP failed to state a claim against UHC, UHC Group, University House Communities Acquisitions Sub., LLC ("UHC Acquisitions"), InvenTrust, and Scion for fraudulent suppression, because it only included generalized allegations against "all defendants" that did not suffice under Rule 9(b)'s heightened pleading requirements.

(*See Id.* at 11-13, 23-24.)

On December 13, 2017, SCP filed its Amended Complaint, which sought to correct the deficiencies noted above. In the Amended Complaint, SCP has removed any request for relief in the "Counts" section against Defendants UHC and UHC Acquisitions; although the Amended Complaint contains passing references to the two entities, SCP does not appear to seek relief from them. Defendants InvenTrust, Scion, and UHC Group responded to the allegation in SCP's Amended Complaint with a renewed Motion to Dismiss, arguing that the changes made by SCP were still insufficient to state a claim under Rules 9(b) and 12(b)(6).

I. STANDARD OF REVIEW

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the facts alleged in the complaint must be specific enough that the claim raised is "plausible." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is *plausible on its face*.") (emphasis added). A claim for relief is plausible on its face when the complaint's "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1325 (11th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Conclusory statements of law may "provide the framework of a complaint," but the plaintiff is required to support them with "factual allegations." *Iqbal*, 556 U.S. at 679.

The process for evaluating the sufficiency of a complaint has two steps. This Court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Conclusory statements and recitations of a claim's elements are thus disregarded for purposes of determining whether a plaintiff is entitled to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. Next, this Court "assume[s] [the] veracity" of "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an

entitlement to relief." *Iqbal*, 556 U.S. at 679. A complaint's factual matter need not be detailed, but it "must . . . raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In reviewing the complaint, this Court "draw[s] on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Nonetheless, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the facts alleged] is improbable." *Twombly*, 550 U.S. at 556. This Court considers only "the face of the complaint and attachments thereto" in order to determine whether plaintiff states a claim for relief. *Starship Enters. of Atlanta, Inc. v. Coweta Cty.*, 708 F.3d 1243, 1252 n.13 (11th Cir. 2013). Generally, the complaint should include "enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory.'" *Am. Fed'n of Labor & Cong. of Indus. Orgs v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683-84 (11th Cir. 2001)).

## II.     Discussion

As in their first Motion to Dismiss, Defendants challenge the sufficiency of the changes wrought by SCP in its Amended Complaint in regards to SCP's breach of contract claim (Count I) and fraudulent suppression claim (Count II). After

review of the amendments made by SCP, the Court concludes that Defendants' Motion to Dismiss is due to be granted.

### A. SCP'S BREACH OF CONTRACT CLAIM

As stated by the Court in its prior Memorandum of Opinion, SCP's Complaint failed to state a claim against UHC Group and InvenTrust for breach of contract because it did not show how these Defendants were bound by either the PSA or Earn-Out Agreement. In its original Complaint SCP alleged that UHC Group and InvenTrust owned South 10 during the Earn-Out Period; SCP appeared to argue that UHC Group and InvenTrust's ownership of South 10 made them liable under the Earn-Out Agreement's clause that purports to bind "successors and permitted assigns." (Doc. 1 Ex. 2 ¶ 12.) Missing from SCP's original Complaint were any allegations of fact showing that UHC Group and InvenTrust were assignees or successors to UHT who had executed the Earn-Out Agreement with SCP.

SCP's First Amended Complaint modified the Complaint's allegations by removing any reference to UHC Group and InvenTrust's *ownership* of South 10, and instead alleged:

> 26. On information and belief, Plaintiff alleges that during the 18 month earn-out period, and before November 1, 2016, [*UHC*] *Group and InvenTrust each contracted to assume the same obligations as UHT under the* [*Earn-Out Agreement*].

> 27. The [Earn-Out Agreement] contained *no* provision for the obligations and duties of UHT to be transferred or assigned, and it contained no exculpatory clause relieving UHT of its obligations under the [Earn-Out Agreement] upon an assignment of the contract. *However, the [Earn-Out Agreement] provided that its provisions would "be binding upon the parties hereto and their successors and permitted assigns." Both [UHC] Group and InvenTrust became successors under the terms of the [Earn-Out Agreement]. As such, each became obligated to adhere to the [Earn-Out Agreement's] provisions.*
>
> 28. On information and belief, on or before Nov. 1, 2016, during the 18 month earn-out period, Scion entered into a contract to purchase UHT and or South 10. Scion held itself out as having an ownership interest in UHT and or South 10. Additionally, Scion was the agent for UHT. UHC Group, through its Executive V.P., Troy Manson, acted as agent for UHT by signing the [Earn-Out Agreement].
>
> . . .
>
> 38. Under the [Earn-Out Agreement], and because they were assigned the duties and obligations of the [Earn-Out Agreement] and or became a successor to UHT, Defendants UHT, [UHC] Group, InvenTrust, and Scion were obligated to accept all compliant retail space leases.

(Doc. 27 at ¶¶ 26-28, 38 (emphasis added) (citations omitted).) SCP thus modified its original allegations by stating that UHC Group and InvenTrust both assumed the Earn-Out Agreement and became successors to UHT. The Court further notes that in its Response to Defendants' Motion to Dismiss, SCP claims the Amended Complaint alleged UHC Group and InvenTrust, "agreed to purchase UHT or its assets, specifically South 10." (Doc. 32 at 14.) But after thorough review of the

Amended Complaint the Court has been unable to find where SCP has made any allegations about the purchase of UHT by UHC Group or InvenTrust.

The modifications in SCP's Amended Complaint are still insufficient for it to state a claim for breach of contract against UHC Group and InvenTrust. SCP has included no factual allegations about how UHC Group and InvenTrust assumed UHT's obligations or became its successors—instead SCP has made the sort of conclusory statements and recitations of a claim's elements that *Iqbal* cautions a court to disregard. 556 U.S. at 678. Removing the legal conclusions— that UHC Group and InvenTrust assumed the Earn-Out Agreement and became successors to UHT—from the above paragraphs removes the backbone from SCP's breach of contract claim against UHC Group and InvenTrust. (*See* Doc. 27 ¶¶ 26, 27, 38.) No facts remain to prop up SCP's theory that UHC Group and InvenTrust are somehow bound by the Earn-Out Agreement.

SCP argues that discovery will show that UHC Group and InvenTrust were liable under the Earn-Out Agreement. SCP is not entitled to discovery on this issue where it can offer no factual allegations at all to back up the legal conclusion that UHC Group and InvenTrust assumed the Earn-Out Agreement and became successors to UHT. *Iqbal*, 556 U.S. at 678-79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

SCP's claims in Count I against UHC Group and InvenTrust are due to be dismissed as SCP has failed to state a claim for breach of contract against these Defendants. (*See also* Doc. 23 at 9-11.) The Court will enter a separate Order consistent with its above discussion of the breach of contract claim.

## B. SCP'S FRAUDULENT SUPPRESSION CLAIM

UHC Group, InvenTrust, and Scion also contend SCP has failed to satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b) necessary to state a claim for fraudulent suppression. In addition to the general plausibility requirements established by *Twombly* and *Iqbal*, Rule 9(b) provides that for a claim "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The particularity requirement in Rule 9(b) is satisfied when a complaint sets forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quotation omitted). "Rule 9(b) must not be read to abrogate rule 8, however, and a court considering a motion to dismiss for failure to plead fraud with particularity should

always be careful to harmonize the directives of rule 9(b) with the broader policy of notice pleading." *Friedlander v. Nims*, 755 F.2d 810, 813 n.3 (11th Cir. 1985).

As in SCP's Complaint, SCP's Amended Complaint contains contradictory, shotgun-style allegations filled with conclusory statements in its fraudulent suppression claim. The Court cannot determine who is responsible for what act or omission under SCP's allegations. SCP claims in shotgun-form that:

> 47. Defendants UHT, Group, InvenTrust and Scion had a duty to timely disclose the following material facts to the Plaintiff: 1) there was an agreement for Scion to purchase UHT and or South 10, and later that Group and InvenTrust each entered into an agreement to purchase UHT and or South 10; 2) that [UHC] Group and InvenTrust were assigned the obligations and duties under the [Earn-Out Agreement] and or became a successor to UHT; 3) that those Defendants, [UHC] Group, InvenTrust, and Scion, would each require its approval of any tenant and lease, notwithstanding UHT's previous approval; 4) that those three Defendants had criteria different from UHT and or the [Earn-Out Agreement] for approving prospective tenants and lease terms; 5) that executing the lease would require Scion's stockholder approval; 6) that the lease form submitted for approval to Scion, later presented to UHT, [UHC] Group, and InvenTrust, which had been previously approved by SCP and UHT and met the criteria attached to the [Earn-Out Agreement], was deficient in their view, and would not be approved in its existing form.
>
> 48. SCP relied on the facts known to it when it spent $450,000 for the build out and negotiated the lease with BOBA. Had SCP timely known any of the material facts set out in paragraph 47 above, and that UHT, [UHC] Group, InvenTrust and or Scion would intentionally delay signing the BOBA lease for months, it would not have spent $450,000 for the build-out, making the premises habitable for tenants, and would not have incurred time and expense obtaining a form lease, negotiating the BOBA lease, and pursuing other possible tenants.

(Doc. 27 at 47-48.) Rather than correcting the shotgun pleadings the Court identified in SCP's Complaint, SCP has substituted the individual Defendants' names—UHT, UHC Group, InvenTrust and Scion—in place of "Defendant" and has used otherwise indistinguishable paragraphs from the original Complaint.[2]

Whether SCP listed each Defendant's name separately or used the moniker "Defendants" does not matter. Terminology was not among the Complaint's defects identified by the Court. It was the shotgun-style of SCP's pleadings which lumped together all Defendants' actions and omissions that rendered SCP's

---

[2] Paragraphs 44-45 of SCP's original Complaint (doc. 1) state:

> 44. Defendants had a duty to timely disclose the following material facts to the Plaintiff: 1) there was an agreement for Scion to purchase UHT; 2) the purchaser would require its approval of any tenant and lease, notwithstanding UHT's previous approval; 3) that the purchaser had criteria different from UHT for approving prospective tenants and lease terms; 4) that executing the lease would require Scion stockholder approval; 5) that the lease form submitted for approval to Scion, and or any other Defendant that owned some or all of UHT after July 2, 2015 and prior to Nov. 1, 2016, which had been worked out and approved by SCP and UHT before title to UHT was transferred, was deficient and would not be approved in its existing form by the purchaser.
>
> 45. SCP relied on the facts known to it when it spent $450,000 for the build out and negotiated the lease with BOBA. Had SCP timely known the material facts set out in paragraph 44 above, and that the Defendants would intentionally delay signing the BOBA lease for approximately seven months, it would not have spent $450,000 for the build-out, making the premises habitable for tenants, and would not have wasted time and money obtaining a form lease, negotiating the BOBA lease, and pursuing other possible tenants.

(Doc. 1 at 44-45.) Outside of the allegation that UHC Group and InvenTrust were assigned the obligations and duties under the Earn-Out Agreement and/or became a successor to UHT, the only additional change that SCP made in its Amended Complaint is listing out the Defendants by name.

fraudulent suppression claim subject to dismissal. The Court made this clear in the Memorandum of Opinion. (Doc. 23 at 15 ("Review of SCP's Complaint shows that it contains . . . general shotgun pleadings that make no distinction between all six of the Defendants."); *id* at 21 ("As in Count I, SCP has made generalized allegations against all six Defendants without distinguishing between the Defendants' actions."); *id.* at 23 ("SCP's fraudulent suppression count also includes generalized allegations against all Defendants that do not distinguish which Defendant is responsible for which act or omission. Such generalized allegations are not sufficient under Federal Rule of Civil Procedure 9(b).").)

Shotgun pleading and the "lumping together" defendants should be discouraged under all circumstances, but in the Rule 9(b) context it often blurs the actions of defendants to the extent that the complaint no longer states "the circumstances constituting fraud or mistake . . . with particularity." Fed. R. Civ. P. 9(b). The Eleventh Circuit has explained that, "Because fair notice is perhaps the most basic consideration underlying Rule 9(b), the plaintiff who pleads fraud must reasonably notify the defendants of their purported role in the scheme." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997) (citations and quotation marks omitted). "Therefore, in a case involving multiple defendants . . . 'the complaint should inform each defendant of the nature of his alleged

participation in the fraud.'" *Id.* (quoting *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777-78 (7th Cir. 1994)). Shotgun-style pleadings "render[] the factual underpinnings of the Complaint practically incomprehensible" and create a conflicting description of events. *Centrifugal Air Pumps Australia v. TCS Obsolete, LLC*, No. 610-CV-820-ORL-31DAB, 2010 WL 3584948, at *2 (M.D. Fla. Sept. 9, 2010).

SCP's shotgun-style pleadings do not comply with Rule 9(b)'s particularity requirements and create plainly contradictory allegations. For example, by lumping together all Defendants, SCP has alleged that UHT, UHC Group, and InvenTrust (and Scion) should have disclosed to SCP "that executing the lease would require Scion's stockholder approval," (doc. 27 ¶ 47), and that Scion (as well as the other Defendants) had a duty to disclose that "[UHC Group] and InvenTrust were assigned the obligations and duties under the Earn-Out Agreement." (*Id.*) In addition to their shotgun nature, these same pleadings are also deficient because they include conclusory statements that are to be struck under *Twombly* and *Iqbal*. *See, e.g.*, Doc. 27 ¶ 47 ("Defendants UHT, Group, InvenTrust and Scion *had a duty* to timely disclose the following material facts to the Plaintiff"); *id.* ("[UHC] Group and InvenTrust were assigned the obligations and duties under the [Earn-

Out Agreement] and or became a successor to UHT.").) Those statements are thus due to be disregarded for their conclusory nature as well. (*See supra* at 6-8.)

Given that SCP has reified the same deficient factual allegations against UHC Group, InvenTrust, and Scion that have already been dismissed once, the Court only briefly summarizes why they are due to be dismissed from the Amended Complaint and references the discussion in its prior Memorandum of Opinion which digests SCP's almost identical allegations in greater detail. (*See* Doc. 27 at 18-24.) "The question of whether a party had a duty to disclose is a question of law to be determined by the trial court." *CNH Am., LLC v. Ligon Capital, LLC*, 160 So. 3d 1195, 1210 (Ala. 2013) (citations omitted). A duty to disclose can arise from either "the confidential relations of the parties or from the particular circumstances of the case." Ala. Code § 6-5-102 (1975). As there are still no allegations of confidential relationship between SCP and the Defendants, the Court yet again conducts the "particular circumstances" inquiry. *See State Farm Fire & Cas. Co. v. Owen*, 729 So. 2d 834, 843 (Ala. 1998) (listing six factors under the particular circumstances inquiry as "(1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiffs' opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances.").

In regards to the relationship of the parties, "[w]hen the parties to a transaction deal with each other at arm's length, with no confidential relationship, no obligation to disclose information arises when the information is not requested." *Freightliner, L.L.C. v. Whatley Contract Carriers, L.L.C.*, 932 So. 2d 883, 892 (Ala. 2005). As stated in the breach-of-contract discussion above, SCP has only alleged that UHC Group and InvenTrust have any contractual obligation to SCP "upon information and belief," and without any accompanying factual allegations of how either Defendant actually has an obligation under the Earn-Out Agreement. SCP has included no specific factual allegations concerning UHC Group or InvenTrust's contractual relationship to SCP, but only legal conclusions. The lack of factual allegations is fatal to SCP's suppression claim against these two Defendants, although the Court continues its inquiry with the remaining factors.

Even in the course of an arms-length transaction, "once a party elects to speak, he or she assumes a duty not to suppress or conceal those facts that materially qualify the facts already stated." *CNH America, LLC v. Ligon Capital, LLC*, 160 So. 3d 1195, 1202 (Ala. 2013) (quoting *Freightliner, L.L.C.*, 932 So. 2d at 895). The Court previously found that SCP adequately alleged UHT's representative Jeff Lohmann created a duty to not suppress facts when he stated that the BOBA lease was approved to SCP, but did not disclose that it would take

months before UHT actually executed the lease. (Doc. 27 at 23.) SCP has not alleged that UHC Group or InvenTrust have made *any* such affirmative statements.

SCP has attached to its Amended Complaint copies of an email exchange between representatives of Scion and SCP, but this exchange differs materially from Lohmann's approval of the BOBA lease that required qualification. On July 15, 2016, Mitchell Smith, the Chief Operating Officer of Scion, asked Charles Welch, SCP's president, to send Smith "the lease you have from [BOBA] and I will have our counsel review. This should go pretty quickly." (Doc. 27 at Ex. C.) Welch sent Smith the lease on the same day, while reminding Smith that BOBA had become "very anxious[] for this lease to be approved." (*Id.*)[3] Unlike Lohmann, who should have clarified his statement about the approval of the BOBA lease, Smith never said he would approve the lease at all, just that he would have his counsel review the lease and that the process would be quick. Regardless of Smith's statement, SCP states that it is not seeking to rely on the e-mail exchange between Smith and Welch to show fraudulent suppression, rather it is only to show "Scion's continued method of delay." (Doc. 32 at 23.)

---

[3] The Court notes that Scion approved the lease on August 11, 2016. (Doc. 27 ¶ 29.)

Turning to the remaining two factors argued by the parties, while the value of the facts allegedly the remaining Defendants suppressed was great (although the Court cannot tell which facts were suppressed by which Defendant due to the shotgun nature of paragraph 47) and SCP's ability to find out about those facts was low, the issue still remains that the Earn-Out Agreement involved regular, arms-length transactions that imposed no duty upon the Defendants. "Superior knowledge of a fact, without more, does not impose upon a party a legal duty to disclose such information." *State Farm Fire & Cas. Co.*, 729 So. 2d at 843 (citation omitted).

SCP also raises a second argument for why Defendants had a duty to disclose based on the "foreseeability" of harm that would befall SCP if Defendants did not approve the BOBA lease or tell SCP about the facts in paragraph 47 of the Amended Complaint. SCP bases this foreseeability argument on its reading of *Taylor v. Smith*, 892 So.2d 887 (Ala. 2004) and *Ex parte BASF Construction Chemicals, Inc.*, 153 So.3d 793 (Ala. 2014) and argues that "[a]s the [Alabama Supreme] Court stated in the [*Ex parte*] *BASF* case, the principles of whether a duty arises from the facts are the same whether the cause of action is negligence or fraud." (Doc. 32 at 18.) *Taylor* and *Ex parte BASF* dealt with negligence, not fraudulent suppression. Further, *Ex parte BASF* in no way announced that the

standard to determine duty to a victim was the same for negligence and fraudulent suppression. 153 So.3d at 802. Instead, that case dealt with whether determination of the existence of duty is a question of law or fact. *Id.* at 802-03.

Review of Alabama case law only reinforces that the comparison of the six factors from *State Farm Fire & Cas. Co*, and not some generalized foreseeability inquiry as advanced by SCP, is the correct test to determine duty to disclose for fraudulent suppression under Alabama law. *See State Farm Fire & Cas. Co*, 729 So.2d at 842-43; *Davis v. Sterne, Agee & Leach, Inc.*, 965 So.2d 1076, 1091 (Ala. 2007) ("A duty to speak depends on the relation of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances." (citations omitted)). As SCP has not shown how UHC Group, InvenTrust, and Scion had a duty to disclose to SCP, its claims against those Defendants are due to be dismissed.

### III. CONCLUSION

For the above reasons, Defendants' Motion to Dismiss is GRANTED. SCP has failed to state a claim for breach of contract against UHC Group and InvenTrust; it has failed to state a claim for fraudulent suppression against UHC Group, InvenTrust, and Scion. All other claims not disposed of in this Memorandum of Opinion or the Court's prior Memorandum of Opinion (doc. 23)

remain pending. Specifically, SCP's breach of contract claim continues only against Defendants UHT and Scion; its fraudulent suppression claim continues only against Defendant UHT. An Order consistent with this Opinion will be entered separately.

**DONE** and **ORDERED** on April 5, 2018.

_____
L. Scott Coogler
United States District Judge

190485